UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANCISCO MELGOZA,<br><br>　　　　Defendant. | Case No.: 1:21-cv-00192 JLT<br><br>ORDER DENYING MOTION TO SUPPRESS<br>(Doc. 23) |

Francisco Melgoza moves the Court to suppress all evidence discovered on June 25, 2021. Mr. Melgoza contends that because the officer lacked reasonable suspicion of criminal activity, the officer had no legal grounds for stopping Mr. Melgoza. Because the Court finds that the officer lawfully engaged Mr. Melgoza, the motion is DENIED.

**I.    Background**

On June 25, 2021, Shafter police officer, Ethan Nousch, saw Mr. Melgoza driving a motorcycle on Golden West Avenue in Shafter, California, while wearing a towel on his head. (Doc. 23-1 at 3) Officer Nouch returned to Golden West Avenue by turning right from N. Wall Street and, after doing so, reported that he saw Melgoza fail to stop at a stop sign at the intersection of Golden West Avenue and N. Shafter Avenue. Id. The officer followed in Melgoza's path and as he got closer, Melgoza pulled over to the side of the road. Id. The officer then stopped behind Melgoza while turning on his lights "to avoid Melgoza from possibly being struck by passing vehicles." Id. The officer spoke

to Melgoza who reported he was having a mechanical problem with the motorcycle. Id. During the conversation, the officer noticed Mr. Melgoza wore an electronic ankle monitor. Id. In response to the officer's questions, Mr. Melgoza confirmed he was on probation for narcotics and was subject to search for drugs and firearms. Id. Mr. Melgoza consented to a search. Id. The officer removed a bag hanging across Mr. Melgoza's chest, for officer safety purposes, and placed it on the ground. Id. After the search, the officer picked up the bag and when Mr. Melgoza saw this, he stated, "I'm going to be honest with you. You're going to find a gun and drugs in there." Id.

The officer arrested Mr. Melgoza and, while escorting him to the patrol car, Mr. Melgoza said, "I'm going to prison." (Doc. 23-1 at 3) After the officer placed Mr. Melgoza in the patrol car, he opened the bag and found a loaded, semi-automatic handgun bearing no serial number, a high-capacity magazine, and a large plastic bag of methamphetamine. Id. After receiving consent to search Mr. Melgoza's cell phone, the officer discovered a Facebook message, which implied that Mr. Melgoza was engaged in sales of narcotics. Id.

After confirming that Mr. Melgoza had been convicted of felonies in the past related to drugs and firearms, the officer recommended the District Attorney file charges against Mr. Melgoza for violation of California Penal Code section 12022(c), "Armed with a firearm while committing a drug offense." (Doc. 23-1 at 5). In the report, however, the officer noted various offenses including an infraction for violation of California Vehicle Code section 22450(a).

The defense argues that it has evidence that, in fact, Mr. Melgoza stopped at the stop sign. (Doc. 23) The defense has produced a video taken from the doorbell camera of the house on N. Shafer Avenue that faces down N. Golden West Avenue and the stop sign at issue. The video starts with Mr. Melgoza on his motorcycle at the curb, about one house-length away from the intersection.[1] About 10 seconds into the video, he begins to move the motorcycle forward toward the stop sign. The video shows him repeatedly putting his left foot down, which makes it appear he is "walking" the motorcycle at least as first. Near the intersection[2], Mr. Melgoza's left foot goes to the ground for about

---

[1] The video does not capture the stop sign.
[2] The video does not allow for a view to determine whether there is a limit line or exactly where he is position in relation to the edge of the crossing roadway.

2

three seconds after which, while continuing to straddle the motorcycle, he "walks" the motorcycle forwards a few steps and around the corner and drives off in the wake of a passing semi-truck. The patrol car appears to round the corner from N. Wall Street and onto N. Golden West Avenue at about the time Mr. Melgoza lifts his foot and begins "walking" the motorcycle forward toward the intersection with N. Shafter Avenue. Throughout the video, the lights on the patrol car are not activated. The video ends after the patrol car have completed the right turn onto N. Shafter Avenue and neither it nor the motorcycle are in sight of the camera.

The defense asserts that because Mr. Melgoza had not committed the infraction, the officer lacked the authority to stop his vehicle. Id. Consequently, the defense seeks an order suppressing the evidence seized in connection with the traffic stop should be suppressed. Id. The prosecution argues that the officer did not stop Mr. Melgoza but, rather, engaged in a consensual contact with him.

## II.     Analysis

California Vehicle Code § 22450 requires a driver to stop either at the crosswalk or a limit line, when approaching a stop sign.  If there is no crosswalk or limit line, the driver must stop "at the entrance to the intersecting roadway." The video shows that Mr. Melgoza stopped near the intersection at issue.  The video also shows that after doing so, he walked the motorcycle forward and then around the corner, without stopping.  The video fails to show where, in relation to the entrance of the intersection he stopped initially. Clearly, a stop that is not "at the entrance" to the intersecting roadway will not satisfy the law; a stop at the entrance does.

As noted by the prosecution, the officer can make a mistake of fact and still not violate the Fourth Amendment. The Fourth Amendment requires only, based upon the facts known to him, that the officer form a reasonable suspicion that criminal activity was occurring, and perform a stop in a manner that is not objectively unreasonable. Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Lopez–Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). The video demonstrates the officer could not have seen Mr. Melgoza make his initial stop near the intersection. However, the video also demonstrates that the officer could see Mr. Melgoza walking the motorcycle toward the intersection and then around the corner without stopping. This is objective evidence that the officer saw what appeared to the officer as Mr. Melgoza was performing a "rolling stop," rather than stopping at the

intersection as the stop sign required. If the prosecution for this traffic infraction went forward, it would have been a question for the trier of fact to determine whether Mr. Melgoza stopped his vehicle was sufficiently close to the intersection such to constitute compliance with the law.

On the other hand, the officer reported that *after* Mr. Melgoza stopped his motorcycle, the officer stopped the patrol car and turned on the overhead flashing lights to ensure Melgoza's safety, rather than to effect a detention. Indeed, at no point in the video are the patrol car's overhead lights activated, and there is no police siren sounding. The video demonstrates that traffic on the roadway was moving at a fast clip and showed large vehicles, such as the semi-truck noted above, using the road.  Also, the video shows that the motorcycle, if not fully disabled, was not fully operational. The defense argues that evidence is missing to explain whether the vehicle was disabled or simply refused to restart once it was stopped. No matter which is true, the uncontradicted evidence is that Mr. Melgoza stopped without the officer making a traffic stop[3]. Mr. Melgoza bears the burden of proof on this motion (United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005)), and he has failed to contradict the officer's account.[4]

In United States v. Washington, 490 F.3d 765, 769–70 (9th Cir. 2007), the Ninth Circuit held,

> A person is seized if "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Florida v. Bostick, 501 U.S. 429, 437 (1991) (internal quotation marks omitted); see also United

---

[3] A person is not required to pull over and become the subject of a traffic stop merely because the person sees a patrol car in the rear-view mirror.

[4] At the hearing, defense counsel agreed that no evidentiary hearing was needed and that the officer would testify consistently with his reports. See United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.") (citing United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986), United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990), United States v. Irwin, 612 F.2d 1182, 1187 n.14 (9th Cir. 1980) and United States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972)); United States v. Marcello, 731 F.2d 1354, 1358 (9th Cir. 1984) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine."); United States v. Woodson, No. CR 11-00531 WHA, 2011 WL 5884913, at *6 (N.D. Cal. Nov. 23, 2011) (denying a defense request for an evidentiary hearing because "mere refusal to accept the uncontradicted evidence does not create a material issue of fact"); United States v. Walker, 239 F. Supp. 3d 738, 739 (S.D.N.Y. 2017) ("While [an evidentiary hearing] might have been warranted if there were important credibility issues that could not be addressed from the paper record, the defendant has made no showing that that is the case here."); United States v. Martinez, 992 F. Supp. 2d 322, 325–26 (S.D.N.Y. 2014) ("A defendant is not entitled to an evidentiary hearing in connection with a motion to suppress unless he can show that there are 'contested issues of fact going to the validity of the search' " and in the absence of an affidavit "by someone with personal knowledge that disputed facts exist" an evidentiary hearing is unnecessary) (citations omitted).

States v. Mendenhall, 446 U.S. 544, 554 (1980) (holding that an encounter is a seizure if "a reasonable person would have believed that he was not free to leave"); United States v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004).

It is well established, however, that the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he is willing to answer questions. See Muehler v. Mena, 544 U.S. 93, 101 (2005); see also Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Mendoza–Cepeda, 250 F.3d 626, 628 (8th Cir. 2001). No Fourth Amendment seizure occurs when a law enforcement officer merely identifies himself and poses questions to a person if the person is willing to listen. See Royer, 460 U.S. at 497; see also Orhorhaghe v. INS, 38 F.3d 488, 494 (9th Cir. 1994). This is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place. See United States v. Kim, 25 F.3d 1426, 1430 (9th Cir. 1994). Moreover, it is clear that the permissible questions may include a request for consent to search, see Muehler, 544 U.S. at 101, "as long as the police do not convey a message that compliance with their requests is required." Bostick, 501 U.S. at 435.

Officer Nouch approached Mr. Melgoza and asked him "if he was okay." (Doc. 2301 at 3) The officer asked Mr. Melgoza "if he was having an issue with his motorcycle." Id. After noticing the ankle monitor, the officer asked Mr. Melgoza if he "was on any type of probation" and whether he "could search him." Mr. Melgoza then agreed to the search. Like Washington, the questions were not extensive, and the pre-search contact appears to have been brief. There is no suggestion the officer touched his weapon, drew it, or acted in any way as though he might do so.  There is no suggestion he acted aggressively or communicated to Mr. Melgoza explicitly or implicitly that he was not free to leave.

Mr. Melgoza points to the officer's report, made in the probable cause statement, that the officer "pulled behind Melgoza with the intent to stop him," as evidence that the officer, in fact, stopped Mr. Melgoza's car. Had there been no other evidence, this conclusion would be reasonable. However, the incident report clarifies that, though the officer *intended* to stop Mr. Melgoza, he did not do so because Mr. Melgoza stopped himself. Under this scenario Mr. Melgoza's Fourth Amendment rights were not implicated, and Mr. Melgoza does not argue to the contrary. The fact that the officer supplied a truncated version of the events in the statement of probable cause fails to raise an inference that the full incident report was incorrect. Indeed, the defense acknowledged that the full details of how the contact occurred was unneeded for the probable cause statement and the failure to include it does not render it infirm. Consequently, the Court does not find the Fourth Amendment was violated—or even implicated—by the officer stopping and asking the few questions.

**ORDER**

Based upon the foregoing the Court **ORDERS**:

1. The motion to suppress is **DENIED**.

2. The Court sets a further status conference before Judge Sheila K. Oberto on February 2, 2022 at 1:00 p.m.[5]

IT IS SO ORDERED.

Dated:   **January 27, 2022**

UNITED STATES DISTRICT JUDGE

---

[5] The parties may stipulate, with an adequate time exclusion, to a different status conference date.